Leave to file GRANTED.

E. MET G. SULLIVAN
Judge, U.S. District Court
DATE: 2/26/07

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Robert W. Rhodes, III, et ux )
) CASE NO. 1:06-cv-1840-EGS
vs, )
) RESPONSE TO MOTION TO DISMISS
UNITED STATES )
)
)
)

Defendant, by and with the assistance of counsel, is trying to use IRC § 7433 as

though it repeals § 7431. Both demonstrate knowledge, p. 5, that such is not the case:

> "Section 7431 was added to the Internal Revenue Code six years before section
> 7433, and Congress must necessarily have been aware of section 7431 when it
> enacted section 7433. *Cf. Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)
> ("We assume that Congress is aware of existing law when it passes legislation.").

Additionally, defendant and counsel appear to be attempting to treat Plaintiff's

7431 as though it is a collection action. Defendant and counsel know very well that

7431 and 7433 are stand alone sections of the code and that they operate

independently of each other. 7431 deals with unlawful disclosure. 7433 deals with

disregarding any section of the code and/or its regulations.

The purpose of the Federal Tax Lien Act of 1966, 26 U.S.C. §§ 6321, 6323, was

to fit tax liens into the priority scheme of the Uniform Commercial Code. *Pine Builders,*

*Inc. v United States* (1976, ED Va) 413 F Supp 77, 76-1 USTC  9402, 19 UCCRS 306,

37 AFTR 2d 76-1361. Defendant and counsel admit, p. 12, that the purpose of the

disclosure was other than collection:

> "Had the information not have been disclosed, creditors of the Plaintiff would
> have no way to discover the existence of the liens. "Indeed, the purpose of
> recording the lien...is to place the public on notice of the lien." William E.
> Schrambling Accountancy Corp. v. United States, 397 F.2d 1485, 1489 (9th Cir.
> 1991)."

It is well settled in the courts that §§ 7431 and 7433 do not address the

legitimacy of the collection process, and that "whether a disclosure is authorized under

§ 6103 is in no way dependent upon the validity of the underlying summons, lien or

levy." *Elias v. United States*, No. CV 90-0432, 1990 WL 264722, at *5 (C.D. Cal. Dec.

21, 1990), aff'd 974 F.2d 1341 (9th Cir. 1992); accord, Mann v. United States, 204 F.3d

at 1020 ("We *** agree with *** the majority of courts which have considered the issue

that there is nothing in § 6103 which requires that the underlying means of disclosure be

valid before the safe harbor of § 6103(k)(6) applies.");Wilkerson v. United States, 67

F.3d 112, 116 (5th Cir. 1995) ("The plain language of the Internal Revenue Code

supports the *** contention that the validity of the underlying collection activity is

irrelevant in determining whether a disclosure is wrongful."); Venen v. United States, 38

F.3d 100, 106 (3d Cir. 1994) ("We join those cases that decline to consider the validity

of the underlying levy in deciding whether the IRS has disclosed in violation of section

6103. The history of section 6103 indicates that Congress enacted the provision to

regulate a discrete sphere of IRS activity--information handling...[T]he propriety of the

underlying collection action *** is irrelevant to whether disclosure is authorized under

section 6103."); Bleavins v. United States, 807 F.Supp. 487, 489 ("[Section] 7431 does

not apply to disputed merits of an assessment; it only addresses civil damages for

disclosureviolations of § 6103."), aff'd 998 F.2d 1016 (7th Cir. 1993) (table); Tomlinson

v. United States, 1991 WL 338328, *3 (W.D. Wash. Aug. 20, 1991) (adopting the

position that the validity of underlying liens and levies is irrelevant), aff'd 977 F.2d 591

(9th Cir. 1992); Flippo v. United States, 670 F.Supp. 638, 643 (W.D.N.C. 1987) ("As a

threshold matter the validity of the underlying lien and levy is wholly irrelevant to the

disclosure issue."),aff'd, 849 F.2d 604 (4th Cir. 1988).

While defendant and counsel attempt to use excerpts from *William E.*

*Schrambling Accountancy Corp. v. United States*, 937 F.2d 1485, 1490

(9th Cir. 1991), as support, the Court should note that these excerpts, if taken as

presented, purport to authorize disclosing confidential information in the public domain,

so that the disclosure of the confidential information in the public domain may then be

excused because the confidential information is, post disclosure, in the public domain;

the absurdity of this circuitous reasoning should result in the Court finding the out-of-

Circuit excerpts unpersuasive.

As stated above and as a threshold matter the validity of the underlying lien and

levy is wholly irrelevant to the disclosure issue.  This makes defendant's argument

frivolous, without merit and without any basis whatsoever in law or in fact.


**WHEREFORE**, plaintiff requests that judgement be entered in his favor against

the United States for actual and punitive damages, the costs of this action,

expungement of the aforementioned notices and such other and further relief to which

plaintiff is) entitled.

Dated _February 17_, 2007

Robert W. Rhodes, III

copies mailed this _17th_ day of February, 2007, to:

NICOLE M. STODUTO
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

Robert W. Rhodes, III, et ux                )
                                            )        Case No: 1:06-cv-1483-EGS
                            Plaintiffs,     )
        v.                                  )        **MEMORANDUM IN SUPPORT OF**
                                            )        **RESPONSE TO MOTION TO**
UNITED STATES (Government),                 )        **DISMISS**
                                            )
                            Defendant.      )
                                            )

        Plaintiff asserts in the Motion that defendant, by and with the active assistance of

counsel, perpetrated a fraud upon the Court, through misrepresentation of fact, law, and

legal precedent, to obtain the said Order.  This motion is supported by the questions,

alternative questions, and supplemental questions presented in the Motion which this

MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION TO DISMISS,

(hereinafter, "Motion") and the Exhibits incorporated herein, support.

## QUESTION PRESENTED

        Did defendant, by and with the active assistance of counsel, misrepresent the

language of Rule 4(i), specifying the Rule's alternative method of service upon the

United States by mail?

## ADDITIONAL QUESTION PRESENTED

        Did defendant, by and with the active assistance of counsel, misrepresent judicial

precedent in respect of service?

## DISCUSSION

Notwithstanding the language of Fed.R.Civ.P. 4(c)(2), Fed.R.Civ.P. 4(i), the Rule

under which service was effected, states:

> (1)    Service upon the United States shall be effected (A) by delivering a copy
> of the summons and of the complaint to the United States attorney for the district
> in which the action is brought or to an assistant United States attorney or clerical
> employee designated by the United States attorney in a writing filed with the clerk
> of the court *or by sending a copy of the summons and of the complaint by
> registered or certified mail* addressed to the civil process clerk at the office of the
> United States attorney and (B) by also sending a copy of the summons and of
> the complaint by registered or certified mail to the Attorney General...(emphasis
> added)

As discussed briefly in Plaintiff's Motion, and more fully discussed immediately

below, Plaintiff  respectfully asserts that Congress' (and the Supreme Court's) approval

of the language of Rule 4(i), specifying the Rule's alternative method, signified by, "or"

and continuing "by sending a copy of the summons and of the complaint by registered

or certified mail..." should be given weight, and that weight so given precludes dismissal

of an action in which service of process was unarguably made.

The Rules of Court are prescribed by the Supreme Court, but authorized by

Congress, 28 USC § 2072, Pub. L. 100–702, title IV, § 401(a), Nov. 19, 1988, 102 Stat.

4648; amended Pub. L. 101–650, title III, §§ 315, 321, Dec. 1, 1990, 104 Stat. 5115,

5117[1]  and are subject to Congress' approval.  28 USC § 2074, Pub. L. 100–702, title

IV, § 401(a), Nov. 19, 1988, 102 Stat. 4649.  Congress approved the language of Rule

---

[1]A prior section 2072, acts June 25, 1948, ch. 646, 62 Stat. 961; May 24, 1949, ch. 139, § 103,
63 Stat. 104; July 18, 1949, ch. 343, § 2, 63 Stat. 446; May 10, 1950, ch. 174, § 2, 64 Stat. 158;
July 7, 1958, Pub. L. 85–508, § 12(m), 72 Stat. 348; Nov. 6, 1966, Pub. L. 89–773, § 1, 80 Stat.
1323, authorized the Supreme Court to prescribe rules of civil procedure, prior to repeal by Pub.
L. 100–702, §§ 401(a), 407, effective Dec. 1, 1988.

4(i), which omits the qualification(s) Congress approved in Rule 4(c)(2). As pointed out

by the Honorable Colleen Koller-Kotelly in *Larue v. United States*, (DDC 06-61), (*accord*

Charles Alan Wright & Arthur R. Miller, 4A Federal Practice & Procedure § 1106, at 151

& n.13 (2d ed.1987), and quoting therefrom,

> "[T]here is no apparent reason why a person specified in Rule 4(c), rather than
> plaintiff or plaintiff's attorney, should be required to mail the copies of process to
> be served on the Attorney General . . .")

Wright and Millers's observation that "[T]here is no apparent reason..." supports

Plaintiff's assertion that service made under Rule 4(i) is sufficient.

Plaintiff's assertion, and the observation in 4A Federal Practice & Procedure §

1106, at 151 & n.13, finds further support in scrutiny of the very cases that defendant

has cited as authority for challenging  propriety of service by mail:

**Case In Point:**

*Davis v. Garcia*, 226 F.R.D. 386 (C.D. Cal. 2004), was dismissed primarily for

Davis' failure to effect timely service.

Although not directly discussed, it is clear that Davis was "a state prisoner

proceeding *Pro se*" *Davis*, at 387, and it appears that Davis attempted <u>personal service</u>

upon certain prison guards, which the Court noted was not allowed (citing *Benny v.*

*Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (fellow inmates, but not the plaintiff inmate

himself, allowed to serve inmate's complaint against prison guards)).

If, as indicated, Davis attempted to make <u>personal</u> service himself, Rule 4(c)(2)

most certainly applied, although *Davis* was dismissed in large part because "plaintiffs

Proof of Service indicates that service was made under Rule 5(b) of the Federal Rules

of Civil Procedure," and "plaintiff simply served a copy of the Summons and Complaint,

without including a waiver of service or notice and acknowledgment form as required by

state and federal law. Cal.Code of Civ. Proc. § 415.30; Fed.R.Civ.P. 4(e)(l)."

Counsel should know that Waiver of Service is unavailable in suits against the

United States, and the California Code of Civil Procedure is inapplicable in the District of

Columbia..

## Case In Point:

*Taylor v. United States*, 192 F.R.D. 223, was dismissed solely for Taylor's failure

to effect timely service.

"Action was subject to dismissal without prejudice for failure to effect proper
service of process within 120 days of filing complaint or to obtain from defendant
a waiver of service, where return-of-service affidavit indicated that plaintiff acted
as the server of process, plaintiffs did not move for an enlargement of time in
order to perfect service, and plaintiffs made no attempt in their response to
defendant's motion to dismiss to show good cause for their failure to perfect
service. Fed.Rules Civ.Proc.Rule 4(c)(2), (d, m), 28 U.S.C.A."
*Taylor*, 192 F.R.D. 223 (headnote 1; West Key 1751)

Although the Taylor Court mentioned "...return-of-service affidavit indicated that

plaintiff acted as the server of process..." the case was dismissed solely upon Taylor's

failure to effect timely service:

"Inasmuch as more than 120 days have passed since the filing of Plaintiffs'
cornplaint; (footnote omitted) plaintiffs have not moved for an enlargement of
time in order to perfect service; and Plaintiffs made no attempt in their response
to CISD's motion to show good cause for their failure to perfect service, the
action against CISD is properly dismissed without prejudice.
seeFed.R.Civ.P.4(m); Fed.R.Civ.P.12(b)(5)."
*Taylor*, 192 F.R.D. 223, 224.

## Case In Point:

MEMORANDUM IN SUPPORT OF
RESPONSE TO MOTION TO DISMISS

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694,[2]

did not even address service of process, and counsel's citation thereof as support for an

"improper service" argument is a clear misrepresentation of that case. *Insurance Corp.*

*of Ireland v. Compagnie des Bauxites de Guinee* involved a district court's decision over

matters governed by Fed.R.Civ.P. 37, as shown in the case syllabus:

> "Federal Rule of Civil Procedure 37(b)(2)(A) provides that a district court, as a
> sanction for failure to comply with discovery orders, may enter
> > [a]n order that the matters regarding which the [discovery] order was
> > made or any other designated facts shall be taken to be established for
> > the purposes of the action in accordance with the claim of the party
> > obtaining the order."

Rule 37 has nothing to do with service of process by any person, in any capacity,

under any rule.

**Case In Point:**

> *Light v Wolf*, 816 F 2d 746 (D.C. Cir. 1987)[3] speaks for itself:

> > "This case concerns the proper method of service of process on a federal
> > official who is being sued, ostensibly in her individual capacity, for
> > activities that might actually fall within the scope of her official duties.
> > More specifically, the question is whether in that situation service upon the
> > individual alone is sufficient, or whether, as the District Court held, service
> > on the United States is also required."

*Light v Wolf* was about nothing more than whether a federal employee (Pat

Genis, for example) could sue her boss (USA Taylor, for example), for interfering with a

private contract (with a local law firm, for example). The case was dismissed solely

because service of process was quashed:

---

[2]The lone Supreme Court case upon which defendant relies on the issue of service.

[3] The first of only 2 cases cited that was litigated in the D.C. Circuit.

> "Employee of government agency brought action against agency
> supervisor for slander and tortious interference with contract involving
> contract employee had negotiated with private foundation. The United
> States District Court for the District of Columbia, John Garrett Penn, J.,
> ordered that service of process be quashed and action be dismissed.
> Employee appealed. The Court of Appeals, Harold H. Greene, District
> Judge, sitting by designation, held that, although allegations of employee's
> complaint on their face supported employee's claim that action was purely
> private dispute, action might in substance be regarded as one against
> supervisor in her official capacity, and thus employee's failure to serve
> copy of summons and complaint on both supervisor and United States
> required dismissal of action."

Clearly, *Light v Wolf* had nothing to do with how defendant Wolf was served, nor

even how the United States was (not) served (at all) in what was intended to be a

private cause of action.

## Case In Point:

In what is apparently a case so far removed from the issues in the case at bar

that  the misrepresentation thereof rises to a whole new order of magnitude, *Relf v*

*Gasch*, 511  F.2d 804 (DC Cir 1975)[4] was a case in which Relf, as next friend for minor

relatives (also Relfs), sought mandamus against Gasch, a District Court Judge, for

transferring a Federal Tort Claims Act action regarding the unauthorized,

nonconsensual tubal sterilization of the minor Relfs.

While Plaintiffs believe that the depths of this outrageous misrepresentation can

only be fully understood by a complete reading of *Relf*[5], the essential point is that the

D.C. Circuit found that Judge Gasch lacked jurisdiction to transfer the distasteful case

from the District of Columbia to the Middle District of Alabama. *Relf*, note 12.

---

[4]The second of the 2 cases cited that was litigated in the D.C. Circuit.

[5]A most distasteful lesson in unchecked agency authority.

*Relf* had <u>absolutely nothing</u> to do with service of process in any form, by any person, in any capacity.

## QUESTION PRESENTED

Did the defendant, by and with the active assistance of counsel, misrepresent the status of the Court's subject matter jurisdiction?

## DISCUSSION

As discussed in Plaintiff's Motion, the Court's *subject matter* jurisdiction was verified by the Supreme Court in *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235 (2006), decided February 22, 2006, and that precedent was cited by the District Court in *Turner v. United States*, 429 F.Supp.2d 149 (D.D.C. 2006), in *Lindsey v. United States*, 448 F.Supp.2d 37 (D.D.C. 2006), and their progeny. Arbaugh was decided February 22, 2006, and preceded defendant's motion to dismiss, yet defendant, with the active assistance of counsel, presented "lack of subject matter jurisdiction" as a primary ground for dismissal. In apparent recognition of Arbaugh's precedent, defendant, with the active assistance of counsel, subsequently added a subject matter challenge based upon the Declaratory Judgments Act.

## QUESTION PRESENTED

Was counsel's assertion with respect to the Declaratory Judgments Act (DJA) a fraud upon the Court?

## DISCUSSION

Counsel asserted (and the Court accepted the assertion) that the DJA prohibits the Court from "declaring rights" by determining whether Internal Revenue Service disregarded provisions of law and regulation; the "exclusive remedy" for which Congress enacted the various Taxpayers' Bill(s) of Rights (creating § 7433). However, if counsel's assertions of DJA prohibition are correct, Congress' enactments of TBOR I, TBOR II, and TBOR III were all sham acts, to wit: *If* the DJA prohibits the Court from hearing a case under IRC § 7433 because it would be declaring rights in respect of federal taxes, such prohibition is absolute, and 7433 is and was, from the enactment of TBOR I, and through both amendments, null and void (making counsel's arguments with respect to administrative exhaustion, service of process, etc., so much window dressing to hide the sham).

## ALTERNATIVE QUESTION PRESENTED

Can Congress' enactment of the various Taxpayers Bill(s) of Rights (IRC section 7433) be construed harmoniously with the Declaratory Judgments Act's internal exception to federal taxes?

## ALTERNATIVE DISCUSSION

The Declaratory Judgments Act was enacted June 25, 1948, ch. 646, 62 Stat. 964; but was based upon title 28, U.S.C., 1940 ed., § 400, and apparently has roots going back as far as 1911. DJA's current incarnation has been amended 10 times.

Internal Revenue Code section 7433 was placed into the Internal Revenue Code as the "exclusive remedy" for IRS disregard of law and regulation by the Taxpayer Bill of Rights (TBOR I) in 1988, and has been amended twice, in 1996 (TBOR II, Public Law

104-168, 110 Stat. 1465) and most recently in 1998 (TBOR III, included in the IRS Restructuring and Reform Act of 1998, Pub. Law 105-206).

It is clear that the Declaratory Judgments Act and the current IRC § 7433 (TBOR III) each affect litigation in respect of federal taxes. What is not as clear is how these two Acts of Congress are to be harmoniously construed. In *Wachovia Bank, N. A. V. Schmidt* , ___ U.S.___, (04-1186, decided January 17, 2006), the Supreme Court provided guidance when, citing *Erlenbaugh v. United States*, 409 U.S. 239, 243, 244, the *Wachovia* Court reiterated the long-standing principle [6] that statutes regarding the same subject matter should be construed *in pari materia*.

To the extent that IRC § 7433 and the Declaratory Judgments Act both operate upon the Court's jurisdiction in respect of federal taxes, *Erlenbaugh,* 409 U.S. at 243, is instructive:

> "a later act [409 U.S. 244] can . . . be regarded as a legislative interpretation of [an] earlier act . . ."

"and 'is therefore entitled to great weight in resolving any ambiguities and doubts.' United States v. Stewart, supra, at 64-65. See also, e.g., Hunter v. Erickson, 393 U.S. 385, 388 (1969); United States v. Freeman, supra, at 565."

The *Erlenbaugh* Court emphasized, at 244:

"The rule is but a logical extension of the principle...that whenever Congress passes a new statute, it acts aware of all previous statutes on the same subject, *cf.* Allen v. Grand Central Aircraft Co., 347 U.S. 535, 541-552 (1954)."

Based upon the foregoing, Plaintiff respectfully asserts that IRC § 7433 (TBOR I, TBOR II, and, material to the instant case, TBOR III) can only be harmoniously

---

[6]Cases cited in *Erlenbaugh* include *United States v. Freeman*, 3 How. 556, 564 (1845); *United States v. Stewart*, 311 U.S. 60, 64 (1940).

construed with the DJA as exceptions to DJA's "federal taxes" prohibition, and that

counsel, if not the defendant, knew as much when presenting the motion to dismiss for

lack of subject matter jurisdiction under the DJA.

## QUESTION PRESENTED

Was the ground of "failure to state a claim" under Fed.R.Civ.P. 12(b)(6)

premature, in the context of "notice pleadings" under Fed.R.Civ.P 8(a), *Conley v.*

*Gibson*, 355 U.S. 41, and Fed.R.Civ.P 12(h)(2)?

## DISCUSSION

In *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235 (2006), the Supreme Court examined

"essential element of a claim" with respect to factual matters. *Arbaugh*, at 1240. Citing

to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U. S. 133, the *Arbaugh* Court

reiterated:

> If satisfaction of an essential element of a claim is at issue, however, the jury is
> the proper trier of contested facts.

This Court has already determined that "exhaustion" is a factual issue, and

defendant, which maintains vigorous disagreement with the *Arbaugh* Court, has been

wont to assert that Plaintiff has failed to plead exhaustion. Once again, the United

States Supreme Court disagrees.

In *Jones v Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____, (Argued: October

30, 2006 -- Decided: January 22, 2007), the Honorable Roberts, C.J., opined that:

> "Failure to exhaust is better viewed as an affirmative defense. Federal Rule of
> Civil Procedure 8(a) requires simply a 'short and plain statement of the claim' in a
> complaint..."

and that,

> "The fact that the [statute at issue]...is silent on the issue whether exhaustion must be pleaded or is an affirmative defense, is strong evidence that the usual practice should be followed, and the practice under the Federal Rules is to regard exhaustion as an affirmative defense..."

The *Jones* Court also reiterated:

> "Courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163,"[7]

and,

> "Given that the [statute at issue] does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by amending the Federal Rules, and not by judicial interpretation.' Leatherman, supra, at 168. Pp. 10-16."

Plaintiff asserts that the Verified Complaint met the "notice pleading"

requirements set forth in Fed.R.Civ.P. 8(a), as interpreted in *Conley v. Gibson*, 355 U.S.

41[8], and reiterated in *Jones v. Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____

(January, 2007), and that defendant's Motion to Dismiss, insofar as it asserted "failure

to state a claim", is premature, and an attempt to pre-empt the jury's authority as the

"proper trier" of the contested "essential element" of exhaustion of "*administrative*

---

[7] Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163
Held: A federal court may not apply a "heightened pleading standard" -- more stringent
than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)

[8] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a
sufficient [355 U.S. 42] ground for dismissal of the suit, since the
Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his
claim." Pp. 47-48.

*remedies* <u>available</u> " as described in IRC § 7433(d)[9], [10].

7433(d)'s language - "unless the court determines" - in the common English to which *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) referred, Id., 861, calls for a determination of fact; clearly within the province of the jury. *Arbaugh*, 1240; *Reeves*. Thus, motion to dismiss on grounds of "failure to state a claim" can be, and, based upon the Congressional language, <u>is</u>, more properly brought <u>after</u> the Court (see footnote 7) has had the opportunity to make a factual determination with respect to exhaustion of <u>available</u> administrative remedies.

Defendant could not seriously assert prejudice by the jury's trial of the factual element, since the jury could, upon examination of all relevant facts, find that available remedies were not exhausted; Fed.R.Civ.P 12(h)(2) allows a Motion to Dismiss for "failure to state a claim" any time prior to judgment, to wit:

> "A defense of failure to state a claim upon which relief can be granted...may be made in any pleading permitted or ordered under Rule 7(a)[11], or by motion for judgment on the pleadings, <u>or at the trial on the merits</u>." Fed.R.Civ.P 12(h)(2) (emphasis added)

### SUPPLEMENTAL QUESTION PRESENTED

Are "general allegations", in the context of the Fed.R.Civ.P 8(a) "notice

---

[9]Plaintiff asserts that "the court" contemplated in IRC § 7433(d) comprises, for purposes of factual determinations, both the judge and the jury.

[10] The Congressional language of 7433(d) is further addressed below.

[11]"Pleadings permitted" are limited to "complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. <u>No other pleading shall be allowed</u>, except that the court may order a reply to an answer or a third-party answer." (Emphasis added)

Pleadings" Rule, as interpreted in *Conley v. Gibson*, 355 U.S. 41, and reiterated in *Jones v Bock,* __ U.S. _____, (Decided: January 22, 2007) (purportedly made by a multitude of Plaintiffs), sufficient to establish a presumption of a pattern of unlawful activity?

## DISCUSSION

Defendant, by and with the assistance of counsel, raised the issue that the allegations in the instant case are similar, if not identical, to dozens of other cases filed to this Court. Plaintiff, concerned only with the instant case, asserts that any alleged similarity of allegations in other cases is irrelevant in respect of the instant case, and draws the Court's attention to the fact that the alleged redundancy of such "general allegations", especially in the numbers asserted by defense counsel, strongly indicates a pattern of unlawful activity on the part of defendant's agency. As contemplated in the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961(5):

> (5) "pattern of racketeering activity" requires at least two acts of racketeering activity[12], one of which occurred after the effective date of this chapter and the

---

[12] As used in Title 18, Chapter 96-

(1) "racketeering activity" means (A) any act or threat involving…extortion; (B) any act which is indictable under … title 18, United States Code: section 1028 (relating to fraud and related activity in connection with identification documents), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), sections 1581-1591 (relating to peonage, slavery, and trafficking in persons), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering) …(F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens),

last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity

Acts generally complained of in the Verified Complaint in the instant case arguably include, or necessarily lead, if true, to the requisite two (2) acts listed in 18 U.S.C. § 1961(1), such as 1) extortion, in forcing Plaintiff to make financial "arrangements" to avoid attack on property, and acts indictable under Title 18, United States Code: §§ 1028, 1341, 1343, 1344, 1503, 1510, 1511, 1512, 1513, and 1951, if committed by any other person, 18 U.S.C. § 1961(3) or enterprise 18 U.S.C. § 1961(4).

## QUESTION PRESENTED

Is defendant, with the active assistance of counsel, "reading into" section 7433 language that Congress had included in TBOR I, totally removed from TBOR II, and intentionally omitted from TBOR III?

## DISCUSSION

TBOR I (1988) expressly withheld jurisdiction in the absence of a prior exhaustion of administrative remedies. TBOR II, Public Law 104-168, 110 Stat. 1465 (1996) specifically removed that prior exhaustion requirement, providing for mitigation of damages in the absence of exhaustion. TBOR III (1998, in Public Law 105-206, §§ 3000, 3102) specified only that "A judgment for damages shall not be awarded under subsection (b) *unless the court determines* that the plaintiff has exhausted the administrative remedies *available* to such plaintiff within the Internal Revenue Service." 26 USC § 7433(d) (emphases added).

It appears that defendant's insistence (in the Motion to Dismiss, citing the

regulation) that administrative remedies must be exhausted "prior to" commencement of a civil action relies solely upon language removed by Congress in 1996; no such "prior exhaustion" language was added in 7433's current incarnation.

## QUESTION PRESENTED

Is Treasury Decision 9050, 68 FR 14320, Mar. 25, 2003, in merely amending Treasury Decision 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, a reasonable interpretation of P.L. 105-206, § 3102 under the deferential framework of *Chevron U.S. A. Inc. v. Natural Resources Defense Council*, Inc., 467 U.S. 837?

## DISCUSSION

As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I.  Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and it appears that the regulation was ineffective until February 18, 1992.  "Remedy", under the 1988 Act was unavailable until 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II (1996), Plaintiff has been unable to find an amended final regulation, but was able to find the "Notice of proposed rulemaking" discussing TBOR II, attached as Exhibit ___ and incorporated by reference.  The "Notice of proposed rulemaking" clearly shows that IRS was aware of Congress' removal of the jurisdictional prohibition.

It must be noted that Treasury Decision 9050, as published, 68, FR 14320, purported to amend Treasury Decision 8392 (the 1992 regulation) indicating that no

"final" regulation implementing the 1996 Act (TBOR II) ever became effective.

Treasury Decision 9050 was itself not effective until March 25, 2003, more than four years and nine months after Congress' enactment of P.L. 105-206, § 3102 (TBOR III). In fact, the regulation was not even proposed until March 5, 2002. Federal Register: Volume 67, Number 43, Page 9929-9934. "Remedy", under the 1998 Act was unavailable until 2003.

This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's "prior administrative exhaustion" requirement, without the statutory framework necessary to such re-implementation.

Plaintiff asserts that Treasury Decision 9050 (the current 26 C.F.R. § 301.7433-1) is 1) an unreasonable interpretation of Public Law 105-206, § 3102; 2) exceeds the authority of Public Law 105-206, § 3102 by reinserting the "may not be maintained" ("prior exhaustion") language of TBOR I; 3) impermissibly extends the operation of the exhaustion requirement; 4) frustrates Congress' intent in creating, and amending, 7433; and that it 5) effectively converts a "7433 damages" claim into a "7422 refund" claim, effecting an unauthorized "stealth repeal" of TBOR III by regulation.

## THE REGULATION IS AN UNREASONABLE INTERPRETATION

The current regulation requires that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit, failing, even under the deferential framework of *Chevron U.S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, the standard of reasonable interpretation of a statute, and is

intended to frustrate a 7433 Plaintiff, to wit:

Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate.[13]  This half-year waiting period is extreme.  In almost every other instance, IRS is limited to (and may limit to) 30 days.  Examples include Collection Due Process Hearing requests (30 days, imposed by Congress); pre-Notice of Deficiency letters (30 days);  even the opportunity to petition for redetermination of a Notice of Deficiency has a window of only 90 days.  Yet IRS chose to give itself 183 days to decide upon an administrative damages claim, asserting, in some instances, the need for time to gather and review its records in relation to the claim.  This assertion is clearly shown as false by the sworn testimony of IRS Records Custodian Robert Dean in UNITED STATES OF AMERICA, v. RICHARD MAYNOR BLACKSTOCK, CASE NO. 06-CR-62-TCK[14].  According to Dean's sworn testimony, IRS can "get access to any records that are filed anywhere in the United States."  Records Custodian Dean's testimony establishes that records can be "gathered" in a matter of moments, certainly within a day; it is incomprehensible that it could take an additional 182 days to review those records.

THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

In construing 7433's current incarnation, the starting point must be the language employed by Congress.  In *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), the Court stated, as it has before:

---

[13]SEE:  excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, attached and incorporated by reference.

[14] See: TRANSCRIPT OF PROCEEDINGS, JUNE 19, 2006, p.4, lines 3 through 10.

> Our first step in interpreting a statute is to determine whether the language at
> issue has a plain and unambiguous meaning with regard to the particular dispute
> in the case. Our inquiry must cease if the statutory language is unambiguous and
> "the statutory scheme is coherent and consistent." United States v. Ron Pair
> Enterprises, Inc., 489 U.S. 235, 240 (1989); see also Connecticut Nat. Bank v.
> Germain, 503 U.S. 249, 253-254 (1992). [519 U.S. 341]

See also:  Reiter v Sonotone Corp., 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326

(1979) and the courts must assume that the legislative purpose is expressed by the

ordinary meaning of the words used. Richards v United States, 369 US 1, 9, 7 L Ed 2d

492, 82 S Ct. 585 (1962).  7433's current language must ordinarily be regarded as

conclusive,  Consumer Product Safety Comm'n v GTE Sylvania, Inc., 447 US 102, 108,

64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that

its intentions are contrary to the words it employed in the statute, this is the ending point

of interpretation. Fuller v. United States, 615 F. Supp. 1054 (D.C. Cal 1985; quoting

Richards v. United States, supra.

TBOR III, found in section 3102 of the IRS Restructuring and Reform Act of

1998, specifically omits the "prior exhaustion" requirement previously found in TBOR I.

Section 7433, as re-amended by TBOR III, is silent with respect to bringing or

maintaining a 7433 action.  The revision states no more than "…no judgment shall be

awarded unless the Court determines that administrative remedies available have been

exhausted."  Treasury Decision 9050 purports to completely thwart the Court's

jurisdiction ("no suit may be maintained") in excess of the statutory mandate.  To that

extent, the "amendment" of the regulation in Treasury Decision 9050 exceeds the reach

of the statute.  (Emphases added)

As noted above, "determines" relates to a factual issue, within the province of a

jury; the factual determination necessarily includes the extent to which any

administrative remedy is "available".

## AVAILABILITY OF REMEDY

A comprehensive history of IRC § 7433 was published by the American Bar

Association, and Plaintiff respectfully directs the Court's attention to what the Bar had to

say about the re-amendment:

> "[F]ew pro se plaintiffs have actual notice of the process established by Treasury
> Regulation section 301.7433-1. Congress should understand many people's
> distrust of the ability of the IRS to proceed with their claims..."

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual

notice of the process" directly addresses "availability" of remedy, as shown by IRS'

published policy regarding return of amounts unlawfully collected. Internal Revenue

Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to

refrain from returning amounts unlawfully collected. P-5-36 states:

> "(1) Returning money wrongfully collected: This Policy Statement has been
> revoked."

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might

have existed was revoked. The administrative remedy of filing a claim to recover

unlawfully collected amounts is clearly unavailable when the Service Policy on such

matters has been revoked.

## REGULATION IMPERMISSIBLY CONVERTS DAMAGES ACTION INTO REFUND
## ACTION

By requiring that Plaintiff(s) (claimants) place a specific value upon injuries

claimed, the regulation effectively neuters the statutory provision in instances where, as

alleged in Plaintiff(s) complaint, IRS denies a meaningful Collection Due Process

Hearing; a "collection" might not yet have occurred, yet Plaintiff's right to challenge the

existence of the underlying liability - established in the statutory provision

(6330(c)(2)(B)) - is thwarted[15].

THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and TBOR III (RRA '98, § 3102) are testaments of Congress'

awareness that IRS cannot be trusted to administer the tax code without supervision.

Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford

DeLong, now a Professor at University of California, Berkeley,

> "The IRS's comparative advantage is using random terror to elicit voluntary
> compliance with the tax code…".

Congress intended that Citizens harmed by IRS' legendary disregard of

governing statutes and regulations have an avenue to be made whole.  Once again, the

Congressional "key" is availability of the administrative remedy.  If the Court makes a

factual determination (province of the jury) that an administrative remedy is effectively

unavailable, it need not be pursued.

The Supreme Court in *Morton v. Ruiz*, 415 U.S. 199 (1974), opined, at 235:

> Where the rights of individuals are affected, it is incumbent upon agencies to
> follow their own procedures. This is so even where the internal procedures are
> possibly more rigorous than otherwise would be required. Service v. Dulles, 354
> U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

As established in the Code of Federal Regulations, IRS refused to even establish

procedures for four years after the right to bring an action was granted by Congress,

---

[15]Counsel's mischaracterization of the instant case as a "refund" action is specifically addressed below.

and currently imposes a prohibitive provision omitted by Congress. Administrative

remedy, arguably available in form, is effectively unavailable in substance, as evidenced

by Treasury Inspector General Tax Administration reports, mandated in RRA '98,

section 1102, failing to show a single instance of IRS granting an administrative claim

for damages. The TIGTA Reports, spanning at least 5 years,  are attached and

incorporated by reference.

As stated by the *Morton Court*:

> The agency power to make rules that affect substantial individual rights and
> obligations carries with it the responsibility not only to remain consistent with the
> governing legislation, *FMC v. Seatrain Lines, Inc.*, 411 U.S. 726 (1973); *Dixon v.
> United States*, 381 U.S. 68, 74 (1965); *Brannan v. Stark*, 342 U.S. 451 (1952),
> but also to employ procedures that conform to the law. See *NLRB v.
> Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) (plurality opinion).

Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102,

*FMC v. Seatrain Lines, Inc.*, *Dixon v. United States*, *Brannan v. Stark*, and the

procedures therein fail to conform to the law. *NLRB v. Wyman-Gordon Co.*

Lack of specific attention to the statutory authorization is especially important in

light of the Supreme Court's pronouncement in *Skidmore v. Swift & Co.*, 323 U.S. 134,

140 (1944), quoted in *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287 n. 5

(1978), and cited in *SEC v. Sloan*, 436 U.S. 103 (1978), specifying that factors to be

considered in giving weight to an administrative ruling include "the thoroughness evident

in its consideration, the validity of its reasoning, its consistency with earlier and later

pronouncements, and all those factors which give it power to persuade, if lacking power

to control." *SEC v. Sloan*, 436 U.S. 103, 117-118.

The regulation itself is the best evidence of "Lack of specific attention to the

statutory authorization" (Skidmore) and failure of "thoroughness…in its consideration" (Sloan).  In 301.7433-1's subsection (a), "An action for damages...may not be maintained...", notwithstanding Congress' omission of a "prior exhaustion" requirement; paragraph (1) thereof changes, "reckless or intentional actions" to "reckless or international actions…" (emphasis added).

Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102; the procedures therein fail to conform to the law, and the regulation fails "all those factors which give it power to persuade." *SEC v. Sloan*, 436 U.S. 103, 117-118.

Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions. *National Labor Relations Board v. Brown*, 380 U.S. 278, 291-292.

## QUESTION PRESENTED

Was counsel's "refund suit" construction of the Verified Complaint - in the absence of a venue assertion - a willful mischaracterization intended to mislead the Court?

## DISCUSSION

Under the "refund suit" statute, 26 U.S.C. § 7422, and 28 U.S.C. § 1402(a), venue for a refund suit is proper only in the judicial district in which the plaintiff resides. Plaintiff contends that defendant should be estopped from "converting" Plaintiff's

damages claim (clearly intended) into a refund claim (clearly unintended) in the absence

of a venue challenge. Further, Plaintiff asserts that the omission of a venue challenge

indicates defendant's awareness of venue for such a suit. Plaintiff contends that,

absent a venue challenge, defendant's Motion to Dismiss on "refund" was little more

than a dilatory tactic, intended to mislead the Court, through prejudice, into a dismissal

on any grounds.

## QUESTION PRESENTED

Was counsel's assertion with respect to the Anti-Injunction Act (AIA) a fraud upon

the Court?

## DISCUSSION

Counsel asserted (and the Court accepted the assertion) that the AIA prohibits

the Court from enjoining defendant's agents/agency from *further* disregarding statute(s)

and regulation(s) in exercising delegated authority. As noted by by the Honorable

Colleen Koller-Kotelly in *Larue v. United States*, (DDC 06-61),

> The Anti-Injunction Act provides, in relevant part:

> Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b),
> 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and
> 7436, no suit for the purpose of restraining the assessment or collection of any
> tax shall be maintained in any court by any person, whether or not such person is
> the person against whom such tax was assessed.

26 U.S.C. § 7421(a).

*Larue* also reiterated that the Anti-Injunction Act "could scarcely be more explicit"

(quoting Bob Jones Univ. v. Simon, 416 U.S. 725, 736, 94 S. Ct. 2038,40 L. Ed. 2d 496

(1974)).

Plaintiff specifically alleged in the Verified Complaint that defendant failed to

provide Notice of Deficiency in accordance with IRC § 6212, arguably "within the rubric

of 26 U.S.C. § 6212(a), which states:

> "If the Secretary determines that there is a deficiency in respect of any tax
> imposed by subtitles A or B or chapter 41, 42, 43, or 44, he is authorized to send
> notice of such deficiency to the taxpayer by certified mail or registered mail. Such
> notice shall include a notice to the taxpayer of the taxpayer's right to contact a
> local office of the taxpayer advocate and the location and phone number of the
> appropriate office."

*Larue v. United States*, (DDC 06-61).

Plaintiff specifically alleged in the Verified Complaint that defendant failed to give

notice of the last day for filing for redetermination of such phantom deficiency in

accordance with IRC § 6213, arguably "within the rubric" (*Larue*) of 26 U.S.C. §

6213(a). Section 6213(a) provides that "[n]otwithstanding the provisions of section

7421(a), the making of such assessment or the beginning of such proceeding or levy

during the time such prohibition is in force may be enjoined by a proceeding in the

proper court[.]" 26 U.S.C. § 6213(a).

Plaintiff specifically alleged in the Verified Complaint that defendant failed to

afford Plaintiff a meaningful Collection Due Process in accordance with IRC 6230/6330.

At least three of the Anti-Injunction Act's exceptions apply to allegations

contained in my Verified Complaint.

Plaintiff contends that defendant's Anti-Injunction Act argument, in the face of

clear exceptions to the operation of the AIA, was fraudulently intended to "reinstate" the

failed subject matter jurisdiction argument in spite of the Supreme Court's *Arbaugh*

decision.

Based upon the foregoing, Plaintiff respectfully seeks relief from Order of dismissing the above-captioned action.

Respectfully Submitted

Dated _February 17th_, 2007

Robert W. Rhodes, III

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the forgoing on:

Pat S Genis

U.S. Dept of Justice

P.O. Box 277

Washington D.C. 20044

Dated _February 17th_, 2007